IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GREGORY WIEDEMAN, | |
|           Plaintiff, | |
| v. | 1:15-cv-4182-WSD |
| CANAL INSURANCE COMPANY, H&F TRANSFER, INC., AUTO-OWNERS INSURANCE COMPANY, WALTER PATRICK DORN, IV, WESCO INSURANCE COMPANY, and SALEM LEASING CORPORATION, d/b/a Salem Nationalease, | |
|           Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Auto-Owners Insurance Company's ("Auto-Owners") Motion for Summary Judgment [61] and Plaintiff Gregory Wiedeman's ("Plaintiff") Cross-Motion for Summary Judgment [186].

**I.   BACKGROUND**

    A.   Facts

This action arises from an August 8, 2014, collision (the "Collision") between Plaintiff and Defendant Walter Patrick Dorn, IV, an employee of Defendant H&F Transfer, Inc. ("H&F").  (Auto-Owners' Statement of Undisputed

Material Facts [61.1] ("ASUMF") ¶¶ 1-3; Pl.'s Resp. [186.1] ¶¶ 1-3).  Auto Owners issued an insurance policy (the "Insurance Policy") to H&F with a term beginning on April 8, 2014.  (ASUMF ¶ 4; Pl.'s Resp. ¶ 4).  Auto-Owners claims H&F then submitted a request to Auto-Owners to cancel the Insurance Policy, with a requested cancellation date of April 24, 2014.  (ASUMF ¶ 5).  Auto-Owners sent H&F a notice that the Insurance Policy was cancelled as of April 24, 2014.  (ASUMF ¶ 6; Pl.'s Resp. ¶ 6).  Auto-Owners claims that, because it cancelled the Insurance Policy, the policy was not in effect on August 8, 2014, the date of the Collision.  It claims that its cancellation of the Auto-Owners Policy is a matter of public record.  (ASUMF ¶ 8 (citing [61.8])).

Plaintiff claims that H&F's president, Tyler Fairey, testified that he does not recall ever requesting Auto-Owners to cancel the Insurance Policy.  (Pl.'s Resp. ¶ 6).  Plaintiff claims that, even if H&F requested the policy be cancelled, or Auto-Owners attempted to cancel the policy on its own, Auto-Owners did not submit the requisite Form K notice for effective cancellation of insurance to the South Carolina Office of Regulatory Staff ("ORS") pursuant to South Carolina Code of Regulations § 103-176, and it did not submit the requisite BMC-35 Form for effective cancellation of insurance to the Federal Motor Carrier Safety Administration ("FMCSA") pursuant to 41 C.F.R. § 387.313.  (Pl.'s Resp. ¶ 6; see

2

also Pl.'s Statement of Additional Undisputed Facts [186.1] ¶¶ 2, 5; Def.'s Resp. [203.1] ¶¶ 2, 5). Auto-Owners admits that it "has never produced any evidence that it submitted Form K to notify the . . . ORS regarding cancellation of the [Insurance] Policy." (Def.'s Resp. ¶ 2).

B. Procedural History

On May 2, 2016, Auto-Owners filed its Motion for Summary Judgment, arguing that it did not provide any insurance coverage to H&F on the date of the Collision, and therefore it cannot be held liable for any of Plaintiff's damages. On May 23, 2016, Plaintiff filed his "Motion for Discoery [sic] Under Rule 56(f) and Memorandum of law in Support" [88] ("Rule 56(d) Response").[1] Plaintiff docketed this Rule 56(d) Response as his "Response in Opposition" to Plaintiff's Motion for Summary Judgment. Plaintiff sought to conduct discovery regarding whether and when H&F requested to cancel its insurance policy with Auto-Owners, and, if H&F did make such a request, whether the form required under 49 C.F.R. § 387.313(d) was transmitted to the federal government.

On September 23, 2016, Plaintiff filed his Motion for Briefing Schedule [178], seeking a briefing schedule for Auto-Owner's Motion for Summary

---

[1] Though the title of Plaintiff's filing states "Rule 56(f)," it appears he intended to file his response under Rule 56(d).

Judgment.  Plaintiff explained that, because there was no deadline set for Plaintiff's opposition to Auto-Owner's Motion, Plaintiff proposed the opposition be due on September 30, 2016, and that Auto-Owners' reply be due October 7, 2016.

On September 30, 2016, Plaintiff filed his "Opposition to Defendant Auto-Owners Insurance Company's First Motion for Summary Judgment, and Plaintiff's Cross-Motion for Summary Judgment" [186] ("Cross-Motion for Summary Judgment" or "Opposition").  Plaintiff argues that Auto-Owners failed to show that it complied with state and federal regulations for effective cancellation of insurance for motor carriers, and that the Insurance Policy thus remained in effect on the date of the Collision.  On October 24, 2016, Auto-Owners filed its Response to Plaintiff's Cross-Motion for Summary Judgment [203].

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.

Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment.  Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial.'"  Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

    B.    Analysis

        1.    Plaintiff's Rule 56(d) Response

Auto-Owners argues extensively that Plaintiff's Opposition to Auto-Owners' Motion for Summary Judgment is untimely.  In lieu of an opposition, Plaintiff initially filed, pursuant to Federal Rule of Civil Procedure 56(d), a request for time to conduct discovery regarding whether and when H&F requested to cancel its insurance policy with Auto-Owners, and, if H&F did make such a request, whether and when the form required under 49 C.F.R. § 387.313(d) was transmitted to the federal government.  Rule 56(d) provides:

> **When Facts Are Unavailable to the Nonmovant**.  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>     (1)    defer considering the motion or deny it;
>
>     (2)    allow time to obtain affidavits or declarations or to take discovery; or

    (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Plaintiff complied with Rule 56(d) by including with his Rule 56(d) Response an affidavit explaining, among other things, that, because discovery was ongoing, (1) Plaintiff had not yet had an opportunity to depose H&F regarding whether they cancelled the Insurance Policy, and (2) Auto-Owners had not produced the cancellation form required under 49 C.F.R. § 387.313(d). ([88.1]). The Court finds Plaintiff's Rule 56(d) Response was appropriate under the circumstances.[2] The Court also finds that Plaintiff's Opposition to Auto-Owners' Motion for Summary Judgment, filed after Plaintiff apparently obtained the discovery he sought, is timely.[3]

    2. The Parties' Motions for Summary Judgment

The Court next turns to the parties' motions for summary judgment. The crux of the parties' dispute is whether Auto-Owners was required to file the forms Plaintiff contends were necessary to cancel the Insurance Policy, and whether its failure to do so rendered ineffective its cancellation of the Insurance Policy.

---

[2] To the extent Plaintiff's Rule 56(d) Response was intended to be a motion for discovery, it appears Plaintiff has now obtained the discovery it sought and the motion is denied as moot.

[3] Briefing on Auto-Owners' Motion for Summary Judgment having been completed, Plaintiff's Motion for Briefing Schedule [178] is denied as moot.

a)   Choice of Law

As a preliminary matter, the Court first must determine what law to apply to determine whether Auto-Owners effectively cancelled its Insurance Policy. Where, as here, the jurisdiction of the Court rests on the diversity of the parties, the Court must apply the choice of law principles of the forum state to determine the appropriate substantive law to apply.  See Erie R.R. Co. v. Tompkins, 304 U.S. 78 (1938).  Under Georgia's choice of law rules, insurance contracts are governed by the law of the state where the contract was made.  See Lima Delta Co. v. Global RI-022 Aerospace, Inc., 789 S.E.2d 230, 235 (Ga. Ct. App. 2016).  The Insurance Policy was issued to H&F in South Carolina, (see [176.4]), and the parties agree that South Carolina law applies here, (see [203] at 9; [186.2] at 5).  Thus, South Carolina law governs and sets the standards for insurance policy cancellation.  See Provau v. State Farm Mut. Auto. Ins. Co., 772 F.2d 817, 819 (11th Cir. 1985) (holding that insurance contracts are governed by substantive state law).

b)   South Carolina's Motor Carrier Regulations

The South Carolina Code of Regulations provides:

1. Thirty (30) Days' Notice Required.  Any insurance company, surety bond company, or motor carrier which desires to cancel a policy or bond issued to a motor carrier subject to these rules can do so only after giving the ORS not less than thirty (30) days notice.  The thirty (30) days will begin to run once the notice is received by the ORS.

8

> 2.  Form K or Form L Used to Give Notice of Cancellation. Notification of cancellation will be made on forms prescribed by the commission. Form K, "Uniform Notice of Cancellation of Motor Carrier Insurance Policies" (see Form K in 23A S.C. Code Ann. Regs. 38-447), will be used to notify the ORS of cancellation of an insurance policy, and Form L, "Uniform Notice of cancellation of Motor Carrier Surety Bonds" (see Form L in 23A S.C. Code Ann. Regs. 38-447), will be used to notify the ORS of cancellation of a surety bond.

S.C. Code Regs. § 103-176.

The parties do not identify, and the Court is unable to find, any South Carolina decisions interpreting Section 103-176.  Plaintiff relies on U.S. Fid. & Guar. Co. v. Sec. Fire & Indem. Co., 149 S.E.2d 647 (S.C. 1966), a case in which the South Carolina Supreme Court considered an insurance cancellation provision in the South Carolina Motor Vehicle Safety Responsibility Act (the "Act").  The provision at issue in U.S. Fid. stated:

> Notice required to cancel certified policy; cancellation by subsequent policy.  When an insurance carrier has certified a motor vehicle liability policy under § 46-748 or 46-749, the insurance so certified shall not be cancelled or terminated until at least ten days after a notice of cancellation or termination of the insurance certified shall be filed with the Department, except that a policy subsequently procured and certified shall at 12:01 A.M., on the effective date of its certification, terminate the insurance previously certified with respect to any motor vehicle designated in both certificates.

U.S. Fid., 149 S.E.2d at 650 (quoting South Carolina Code of Laws § 46-702(7)(h) (1962) (the "U.S. Fid. Provision")).  The South Carolina Supreme Court noted that

9

"the Act contemplates continuous [insurance] coverage of [motor vehicles] and devolves the duty of enforcing the requirement upon the State Highway Department.  This duty could not be accomplished unless the Department has the advance notice required to place into operation the administrative procedures necessary to accomplish such purpose."  Id.  The court stated that "[s]tatutory provisions requiring notice for cancellation or termination of compulsory motor vehicle insurance are mandatory, must be strictly followed to effect a cancellation or termination of the policy, and must be construed so as to effect the statutory purpose of providing protection to the general public."  Id.

Turning to the language of the provision, the court reasoned that "[t]he clear intent of the statute was to require notice, in the event of the end of coverage under a certified policy either by Cancellation or termination, in order that the Department would be able to protect the public by preventing the operation of a motor vehicle by the insured without proof of continued financial responsibility."  Id.  The court held:

> While the statute does not expressly state that the coverage of a certified policy will continue in force if the insurer fails to comply with the notice requirement, such is the clear intent and result of the language used.  Since it is provided that the insurance so certified shall not be cancelled or terminated "until" the notice is given to the Department, it is obvious that the coverage of the policy does not end until after the notice requirements are met.  Any other construction would render useless the requirement that notice be given.

10

Id. at 650-51.

Auto-Owners contends that the South Carolina Court of Appeals' decision in Peterson v. W. Am. Ins. Co., 518 S.E.2d 608 (S.C. Ct. App. 1999) stands for the proposition that, where an insured voluntarily cancels its insurance policy, the insurer is absolved of its cancellation reporting responsibilities.  In Peterson, the court determined that an insured's voluntary cancellation of his policy absolved the insurance company's notification responsibilities under Sections 56-10-240 and 56-10-40 of the South Carolina Code (the "Peterson Provisions").  Section 56-10-240, which has since been amended, required that, "[i]f five working days after the last day to pay an automobile liability insurance premium . . . a motor vehicle is an uninsured motor vehicle, *the insurer* shall give written notice . . . within ten days after the five-day period ends . . . to the department of the cancellation or refusal to renew . . . ."  Peterson, 518 S.E.2d at 611 (emphasis in original).  Section 56-10-40, which also has been amended, provided that "[e]very insurer writing automobile liability insurance in this State . . . shall immediately notify the department of the lapse or termination of any such insurance . . . ."  Id.  The court noted that each of these provisions reference only an insurer's cancellation notice, and that the provisions contemplate situations where the insurer cancels or refuses to renew a policy, not where an insured voluntarily cancels a policy.  The court thus found

11

that the provisions' notification requirements applied only when an insurer cancels or refuses to renew a policy, and did not apply where the insured voluntarily sought to cancel an insurance policy. Id.

Peterson does not apply here. The regulation at issue here differs from the Peterson Provisions because Section 103-176 explicitly states that comporting with its requirements is the only way to cancel a motor carrier policy. S.C. Code Regs. § 103-176(1) (a party that seeks to cancel a motor carrier policy "can do so only after giving the ORS not less than thirty (30) days notice").[4] This explicit language is similar to the language in the U.S. Fid. Provision, which stated that an insurance policy "shall not be cancelled or terminated" until notice was provided pursuant to the provision. The U.S. Fid. court underscored this explicit requirement in reaching its conclusion that the insurer's failure to provide notice of cancellation caused the policy to remain in force. See U.S. Fid., 149 S.E.2d at 650-51; see also Fid. & Cas. Ins. Co. of N.Y. v. Nationwide Ins. Co., 295 S.E.2d 783, 785 (S.C. 1982) (finding that, unlike the U.S. Fid. Provision, Section 56-11-220 did not contain language that makes clear that the policy shall remain in effect until the

---

[4] The Peterson Provisions require an insurer to notify the appropriate state office of an insurance cancellation, but the provisions are silent as to the effect of an insurer's failure to notify and do not state that notification is required to effectively cancel a policy.

required notice is given). The regulation at issue here also is unlike the Peterson Provisions because Section 103-176 applies to "[a]ny insurance company, surety bond company, or motor carrier" that seeks to cancel a motor carrier policy. S.C. Code Regs. § 103-176. As the Peterson court noted, the Peterson Provisions imposed obligations only on insurers, and it was on this basis that the court found the notification requirements did not apply.

The Court finds that the plain language of Section 103-176 makes clear that, here, the only way to cancel the Insurance Policy is for the insurance company, Auto-Owners, or the motor carrier, H&F, to file Form K with the ORS with no less than thirty (30) days notice. "Any other construction would render useless the requirement that notice be given." U.S. Fid., 149 S.E.2d at 651.[5]

---

[5] Auto-Owners also argues that Section 38-77-120 provides that notice of cancellation is not required where the "named insured has demonstrated by some overt action to the insurer or its agents that he expressly intends that the policy be canceled or that it not be renewed." ([203] at 10 (quoting S.C. Code § 38-77-120)). Section 38-77-120 does not apply here, because it pertains to an insurer's obligation to notify an insured of the insurer's decision to cancel or not renew a policy. Indeed, the inclusion of a cancellation notice exception in Section 38-77-120 and its absence in Section 103-176 further supports that there is no exception to the motor carrier cancellation notification requirement. See Fid. & Cas. Ins. Co., 295 S.E.2d at 785 ("In construing a statute, it is proper to consider legislation dealing with the same subject matter." (citing Hartford Accident & Indem. Co. v. Lindsay, 254 S.E.2d 301 (S.C. 1979))).

The Court's conclusion is supported by the decisions of other courts that have considered similar provisions. For instance, Georgia courts interpreting a similar motor carrier insurance cancellation provision[6] have found that a person injured by a motor carrier can recover under the motor carrier's expired or cancelled insurance policy where the injury occurs before the insurer files a notice of termination with the Georgia Public Service Commission ("PSC"). See Progressive Preferred Ins. Co. v. Ramirez, 588 S.E.2d 751, 753-54 (Ga. 2003) (citing DeHart v. Liberty Mut. Ins. Co., 509 S.E.2d 913 (Ga. 1998) ("Because the policy continued until the PSC received proper written notice of cancellation and Liberty Mutual did not file a Form K cancelling the policy with the commission before [plaintiff] was injured on May 28, 1988, . . . Liberty Mutual is liable to [plaintiff] based on the continuous coverage provision of the Georgia PSC regulations."); Smith v. Nat. Union Fire Ins. Co., 195 S.E.2d 205 (Ga. Ct. App. 1972) ("[U]ntil proper notice is given to the [PSC], the policy is effective for the benefit of the public.")).

---

[6] The provision, Rule 1-8-1-.07(c) of the Georgia Public Service Commission Rules, provides that "polices of insurance, endorsement, or certificates of insurance . . . shall be continuous and shall not be cancelled or withdrawn until 30 days notice in writing by the insurance company . . . has been given to the [Georgia Public Service Commission]."

Other state courts have found motor carrier insurance cancellation ineffective where an insurer did not comply with statutory cancellation requirements.  See Grubbs v. Credit General Ins. Co., 939 S.W.2d 290, 292-94 (Ark. 1997) (holding that a statute declaring "[n]o notice of cancellation . . . shall be effective unless mailed" at least ten days prior to the effective date was unambiguous and an "invalid effective date of cancellation voided the cancellation"); Pedersen v. United Life Ins. Co. of Kan., 33 P.2d 297, 299 (Kan. 1934) (construing a statute's mandate that "[a]ny attempt on the part of such insurance company . . . to cancel or forfeit any such policy without the notice herein provided shall be null and void" strictly against insurers); Me. Bonding & Cas. Co. v. Knowlton, 598 A.2d 749, 750 (Me. 1991) (noting that "[t]he legislature's use of the word 'unless' is indicative of its intent to require that insurers comply strictly with the statute's terms in order to effect a policy cancellation"); Pearson v. Nationwide Mut. Ins. Co., 382 S.E.2d 745, 747-48 (N.C. 1989) (concluding that insurers must strictly comply with statute stating "[n]o cancellation . . . shall be effective unless" the insured is given fifteen days' notice, or the cancellation will be ineffective); Carroll v. State Farm Mut. Auto. Ins. Co., 419 So.2d 57, 59 (La. Ct. App. 1982) ("Because the notice of cancellation in this case was not mailed 10 days prior to the effective date of cancellation and the date

of the accident, the purported cancellation was ineffective and the insurance policy remained in effect through the date of the accident."); but see Jorgensen v. Knutson, 662 N.W.2d 893, 905-906 (Minn. 2003) (untimely insurance cancellation notice did not render the notice wholly ineffective where insurer met all other cancellation requirements).[7] These cases reflect a tenet of insurance law that "[n]otices not conforming to the statutory requirements [are] ineffective to terminate the insurance contract for nonpayment of premiums." See Jorgensen, 662 N.W.2d at 905-906 (Meyer, J. concurring in part, dissenting in part) (quoting 3 Eric Mills Holmes, Holmes' Appleman on Insurance § 16.10 at 447 (2d ed. 1998)).

The Court finds, however, that the record is insufficient to grant summary judgment in favor of Plaintiff. Plaintiff does not present sufficient evidence to show that neither H&F nor Auto-Owners filed Form K with the ORS. The record shows only that Auto-Owners "has never produced any evidence that it submitted Form K to notify the . . . ORS regarding cancellation of the [Insurance] Policy."

---

[7] Federal courts interpreting analogous federal insurance cancellation provisions similarly "have held that failure to provide the required notice of cancellation results in the maintenance of insurance coverage, at least as to injured third parties." Thompson v. Citizens Nat. Ins. Co., 729 So.2d 709, 711 n.2 (La. Ct. App. 1999) (citing Lewis Machine Co. v. Aztec Lines, Inc., 172 F.2d 746, 750 (7th Cir. 1949); White v. Great Am. Ins. Co. of New York, 343 F. Supp. 1112, 1117 (M.D. Ala.1972)).

(Def.'s Resp. ¶ 2). The question whether H&F or Auto-Owners filed Form K with the ORS is to be resolved at trial. Plaintiff's Cross-Motion for Summary Judgment is denied.[8]

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Auto-Owners Insurance Company's Motion for Summary Judgment [61] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Gregory Wiedeman's Cross-Motion for Summary Judgment [186] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Briefing Schedule [178] is **DENIED AS MOOT**.

**SO ORDERED** this 21st day of December, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[8] Because South Carolina law governs the cancellation of the Insurance Policy, whether Auto-Owners or H&F filed Form K with the ORS is dispositive as to whether the Insurance Policy remained in force, and the Court need not now consider whether Auto-Owners effectively cancelled the Insurance Policy under analogous federal regulations.