# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| GREGORY WIEDEMAN,<br><br>   **Plaintiff,**<br><br> v.<br><br>CANAL INSURANCE COMPANY, H&F TRANSFER, INC., AUTO-OWNERS INSURANCE COMPANY, WALTER PATRICK DORN, IV, WESCO INSURANCE COMPANY, and SALEM LEASING CORPORATION, d/b/a Salem Nationalease,<br><br>   **Defendants.** | 1:15-cv-4182-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendant Auto-Owners Insurance Company's ("Auto-Owners") Motion for Summary Judgment [176].

## I. BACKGROUND

### A. Facts

This action arises from an August 8, 2014, collision (the "Collision") between Plaintiff Gregory Wiedeman ("Plaintiff") and Defendant Walter Patrick Dorn, IV, an employee of Defendant H&F Transfer, Inc. ("H&F"). (Auto-Owners' Statement of Undisputed Facts [176.2] ("ASMF") ¶ 1; Pl.'s Resp. [190.1]

("R-ASMF") ¶ 1). Auto-Owners had issued an insurance policy to H&F (the "Policy"). (ASMF ¶ 4; R-ASMF ¶ 4). Plaintiff seeks to recover against Auto-Owners for alleged damages arising from the Collision. (ASMF ¶ 5; R-ASMF ¶ 5). Auto-Owners claims it did not receive prompt notice of the Collision, as required under the Policy, and thus there is no coverage under the Policy for the damages Plaintiff seeks. Plaintiff argues that Auto-Owners failed to timely raise its notice defense, and that Auto-Owners thus waived the defense.

The Policy states "[y]ou and any person seeking coverage under this policy must notify us promptly as to how, when and where the accident happened." (ASMF ¶ 6; R-ASMF ¶ 6). The Policy also states that "[n]o legal action may be brought against us until there has been full compliance with all terms of this policy." (ASMF ¶ 7; R-ASMF ¶ 7). Auto-Owners claims it first received notice of the Collision on October 27, 2015. (ASMF ¶ 8). Plaintiff contends Auto-Owners received notice shortly after the Collision. Plaintiff presents evidence that, on August 18, 2014, ten days after the accident, attorney Daniel Floyd sent two separate letters to Auto-Owners' insureds, H&F and its driver Dorn, respectively, stating that he had been retained by Auto-Owners to represent them with respect to the potential claims asserted by Plaintiff. On the same day, Floyd sent a retention letter to a consultant, John Bethea, also stating that he had been retained by

2

Auto-Owners to represent H&F and Dorn. In an October 2014 email to its insurance agency, H&F's president Tyler Fairey stated that "Auto-Owners has, as you know, been compiling info in the event of a lawsuit . . . ."[1] (Pl.'s Statement of Material Facts [190.1] ("PSMF") ¶ 9-11). Auto-Owners claims Floyd's references to Auto-Owners in his letters were scrivener's errors, as Floyd stated in a sworn declaration. (Resp. to PSMF [207.1] ("R-PSMF") ¶¶ 9-10). Auto-Owners claims Fairey's email "was simply repeating the erroneous reference to Auto-Owners that was inadvertently made by Floyd." (R-PSMF ¶ 11).

B. Procedural History

On December 31, 2015, Auto-Owners filed its Initial Disclosures. The Initial Disclosures stated:

> Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendant in the responsive pleading.

---

[1] Plaintiff further presents evidence that notice was also given to the insurance agency that produced the Policy, Neace Luekens Insurance Company in North Charleston, North Carolina. Within two months of the accident, Plaintiff's counsel sent a letter to H&F advising it to properly maintain and preserve relevant evidence. H&F forwarded this letter to Neace Luekens the day after it received it. Neace Lukens referenced counsel's letter in a notification to Canal of the accident. H&F also communicated with Auto-Owners through Neace Luekens. Auto-Owners identified Neace Lukens and its representatives as individuals with knowledge of the insurance coverage issues in this case. Mr. Floyd had received a copy of Plaintiff's counsel's October 7, 2014 letter by October 13, 2014. (PSMF ¶ 12-15, 20-21).

3

> **RESPONSE:**
> According to Co-Defendants H&F Transfer and Dorn, the accident at issue was caused by Plaintiff. Further, Auto-Owners did not insure any Co-Defendant. The policy issued by Auto-Owners which is the subject of this action was canceled prior to the accident. Auto-Owners has no liability to Plaintiff or Defendants for an accident which occurred outside of the policy period, and cannot be subject to direct action.
>
> In further response, Auto-Owners states that discovery in this matter has not yet begun. Auto-Owners hereby reserves all of its defenses, and will fully explore the factual basis of all possible defenses raised when discovery commences.

([11] at 2-3). Auto-Owners did not supplement its Initial Disclosures.

On March 11, 2016, Auto-Owners filed its Answer [39]. The Answer sets forth several defenses, including that (i) it did not provide insurance coverage to H&F on the date of the Collision; (ii) Plaintiff is not entitled to maintain a direct action against Auto-Owners; and (iii) it did not owe a duty to Plaintiff. (See Answer at 1-4). Auto-Owners did not include in its Answer any reference to the notice provision or a lack of notice regarding the Collision.

On May 2, 2016, Auto-Owners filed its first Motion for Summary Judgment [61] ("First Motion for Summary Judgment"), arguing that it cancelled its Policy with H&F prior to the date of the Collision, and therefore it cannot be held liable for any of Plaintiff's damages. On December 21, 2016, the Court issued its Order [217] denying Auto-Owners' First Motion for Summary Judgment. The Court

4

found there was an issue of fact as to whether H&F or Auto-Owners filed the necessary forms to cancel the Policy.

On August 30, 2016—the day before discovery closed in this matter—Auto-Owners stated in a joint submission to the Court that "Auto-Owners first received notice of the accident on October 27, 2015—nearly 15 months after it occurred, after Plaintiff filed this litigation, and after any conduct on which Plaintiff relies took place." ([207.1]).

On September 22, 2016, Auto-Owners filed the instant Motion for Summary Judgment, arguing that there is no dispute that Auto-Owners did not receive prompt notice of the Collision, pursuant to the notice requirement in the Policy, and thus there is no coverage under the Policy for the damages Plaintiff seeks.

Plaintiff argues that Auto-Owners waived its notice defense by failing to timely raise it. Plaintiff contends that there is a disputed issue of material fact regarding Auto-Owners' knowledge of the Collision, and that Auto-Owners fails to show any prejudice as a result of the purported late notice. Plaintiff also argues that Georgia's direct action statute, O.C.G.A. § 40-2-140, bars the notice provision of the Policy.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment. Id.

"[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

    B.    <u>Analysis</u>

        1.    <u>Whether Auto-Owners Waived its Notice Defense</u>

Auto-Owners contends that the Policy does not cover Plaintiff, because it did not receive prompt notice of the Collision as required by the Policy. Plaintiff argues that Auto-Owners' Motion should be denied because it failed to raise this defense in its answer, initial disclosures, or discovery responses.

Rule 8(c) of the Federal Rules of Civil Procedure requires that a responsive pleading must set forth certain enumerated affirmative defenses as well as "any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). "A party's failure to raise an affirmative defense in the pleadings typically results in a waiver of that defense." Lee v. Univ. Underwriters Ins. Co., 642 F. App'x 969, 973 (11th Cir. 2016) (citing Proctor v. Fluor Enters., Inc., 494 F.3d 1337, 1350 (11th Cir. 2007)). "In diversity actions, state law determines whether a particular defense is an 'avoidance or affirmative defense' under Rule 8(c)." Id. at 973-74. "However, federal law dictates the manner and time in which defenses are raised and when waiver occurs." Id. at 974 (internal quotation marks omitted).

Where, as here, the jurisdiction of the Court rests on the diversity of the parties, the Court must apply the choice of law principles of the forum state to determine the appropriate substantive law to apply. See Erie R.R. Co. v. Tompkins, 304 U.S. 78 (1938). Under Georgia's choice of law rules, insurance contracts are governed by the law of the state where the contract was made. See Lima Delta Co. v. Global RI-022 Aerospace, Inc., 789 S.E.2d 230, 235 (Ga. Ct. App. 2016). "An insurance contract is constructively made at the place where the contract is delivered." Id. (internal quotation marks omitted). The Policy was issued to H&F in South Carolina. (See [176.4]). Thus, South Carolina law

8

governs and sets the standards for the Policy here. See Provau v. State Farm Mut. Auto. Ins. Co., 772 F.2d 817, 819 (11th Cir. 1985) (holding that insurance contracts are governed by substantive state law).[2]

General principles of insurance law provide that "[t]he insurer bears the burden of proving the applicability of policy exclusions and limitations or other types of affirmative defenses." 17A Couch on Ins. § 254:12 (citing, among others, Auto Owners Ins. Co. v. Benjamin, 781 S.E.2d 137 (S.C. Ct. App. 2015) ("Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability." (internal quotation marks omitted)); Lyons v. Fidelity Nat. Title Ins. Co., 781 S.E.2d 126 (S.C. Ct. App. 2015) (same)[3]); see also Johnson v. Life & Cas. Ins. Co. of Tenn, 3 S.E.2d 805, 805 (S.C. 1939) (noting that the defendant insurance company set forth as an "affirmative defense" a limitation of the policy). Thus, "[a] defense based on an exclusion must be affirmatively alleged and it is a best practice to recite in the answer the complete exclusion as it appears in the

---

[2] The parties agree that South Carolina law applies to the interpretation of the Policy. (See [203] at 9; [186.2] at 5).

[3] Georgia law is substantially similar. See, e.g., Alea London Ltd. v. Lee, 649 S.E.2d 542, 544 (Ga. Ct. App. 2007) ("In Georgia, the insurer bears the burden of showing that a fact situation falls within an exclusionary clause of an insurance policy." (citations omitted)); Kay-Lex Co. v. Essex Ins. Co., 649 S.E.2d 602, 606 (Ga. Ct. App. 2007) (same).

9

policy." 17A Couch on Ins. § 254:12; see also 5 Fed. Prac. & Proc. Civ. § 1271 (3d ed.) (citing federal diversity cases finding that it is an affirmative defense that plaintiff breached insurance policy provisions or that a policy exclusion applies).

"In determining what defenses other than those listed in Rule 8(c) must be pleaded affirmatively, resort often must be had to considerations of policy[ and] fairness[.]" 5 Fed. Prac. & Proc. Civ. § 1271 (3d ed.). "'Fairness' probably should be viewed as a shorthand expression reflecting the judgment that all or most of the relevant information on a particular element of a claim is within the control of one party or that one party has a unique nexus with the issue in question and therefore that party should bear the burden of affirmatively raising the matter." Id.

The Court finds that, under the circumstances of this case, Auto-Owners waived its notice defense by failing to affirmatively plead it in its Answer, and by otherwise failing, throughout the course of this litigation, to give Plaintiff notice that it intended to raise the defense. Auto-Owners, at the time it filed its Answer, was clearly the party that possessed "all or most of the relevant information" regarding whether Auto-Owners received prompt notice of the Collision. Auto-Owners instead relied on different defense theories, including that (i) it did not provide insurance coverage to H&F on the date of the Collision; (ii) Plaintiff is not entitled to maintain a direct action against Auto-Owners; and (iii) it did not

10

owe a duty to Plaintiff. The first time Auto-Owners ever alluded to a lack of notice was apparently in a submission made on August 30, 2016—the day before discovery closed in this matter—stating that "Auto-Owners first received notice of the accident on October 27, 2015—nearly 15 months after it occurred, after Plaintiff filed this litigation, and after any conduct on which Plaintiff relies took place." ([207.1]). Auto-Owners then explicitly raised the notice exclusion for the first time in its Motion for Summary Judgment. Plaintiff promptly challenged Auto-Owners' right to rely on the exclusion.

Auto-Owners' argument that Plaintiff was not prejudiced by Auto-Owners' failure to affirmatively plead its notice defense is unpersuasive. Auto-Owners claims "Plaintiff could have taken depositions of Auto-Owners' representatives, served Interrogatories on Auto-Owners, and/or propounded requests for admissions." ([207] at 6). This argument ignores that Plaintiff did not have a reason to seek discovery as to the notice defense, because Plaintiff did not know Auto-Owners intended to raise the defense until the day before the close of discovery. Under these circumstances, the Court finds Auto-Owners failed to timely raise the notice defense, and its defense based on the notice provision is waived. See Carey Canada, Inc. v. California Union Ins. Co., 748 F. Supp. 8, 14 (D.D.C. 1990) (finding insurance policy exclusion was an affirmative defense that

insurance company waived "by failing to plead it as an affirmative defense or otherwise signal an intention to rely on it at any point prior to the filing of [its summary judgment] motion.").

  2. <u>Whether Auto-Owners Received Prompt Notice and Whether it was Prejudiced by Failure to Receive Prompt Notice</u>

Even if Auto-Owners had not waived its notice defense, summary judgment would be denied because there remains a dispute of fact as to whether Auto-Owners received prompt notice of the Collision. Plaintiff shows that, on August 18, 2014, ten days after the Collision, attorney Daniel Floyd sent two letters to H&F and Dorn stating that he had been retained by Auto-Owners to represent them with respect to the potential claims asserted by Plaintiff. The same day, Floyd sent a retention letter to a consultant, John Bethea, also stating he had been retained by Auto-Owners to represent H&F and Dorn. In an October 2014 email to its insurance agency H&F's president Tyler Fairey stated that "Auto-Owners has, as you know, been compiling info in the event of a lawsuit . . . ." Though Floyd later submitted a declaration stating his letters erroneously referred to Auto-Owners rather than Wesco Insurance Company, ([203.3] ¶¶ 3-5), Auto-Owners does not provide any support for its claim that Fairey's October 2014 email "was simply repeating the erroneous reference to Auto-Owners that was inadvertently made by Mr. Floyd[,]" (R-PSMF ¶ 11).

12

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Auto-Owners knew of the Collision approximately one month after it occurred.

Even if Auto-Owners did not receive prompt notice, it fails to show how it was prejudiced by the purportedly late notice. The purpose of a notification requirement in an insurance policy is to allow the insurer to investigate facts and to assist the insurer in preparing a defense. Vermont Mut. Ins. Co. v. Singleton By & Through Singleton, 446 S.E.2d 417, 421 (S.C. 1994) (citing Washington v. National Service Fire Ins. Co., 168 S.E.2d 90 (S.C. 1969)). "Where the rights of innocent parties are jeopardized by a failure of the insured to comply with the notice requirements of an insurance policy, the insurer must show substantial prejudice to the insurer's rights." Id. (citing Factory Mut. Ins. Co. v. Kennedy, 182 S.E.2d 727 (S.C. 1971)).

Auto-Owners claims it was prejudiced because the purported 14.5-month lapse between the Collision and Auto-Owners' first notice prevented it from investigating the Collision. ([176.1] at 5). Auto-Owners, however, has maintained from the outset of this litigation that it cancelled the Policy before the Collision, and thus that Plaintiff cannot collect under the Policy. This was the position it took in its Initial Disclosures and Answer, and it was the basis of its

First Motion for Summary Judgment. Based on Auto-Owners' unambiguous litigation position, it is unlikely Auto-Owners would have investigated the Collision even if it had received prompt notice of it. Under these circumstances, the Court finds Auto-Owners failed to show "substantial prejudice" to its rights resulting from any failure of prompt notice. See Bay Elec. Supply, Inc. v. Travelers Lloyds Ins. Co., 61 F. Supp. 2d 611, 620 (S.D. Tex. 1999) (insurance company failed to show it was prejudiced by delay in notice where it took the position that the plaintiffs' claims did not fall within the policy coverage, "[t]hus, regardless of the timing of notice, [the insurer] would have denied coverage and was therefore not prejudiced by the timing of [p]laintiffs' notice"). Auto-Owners' Motion for Summary Judgment is denied.[4]

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Auto-Owners Insurance Company's Motion for Summary Judgment [176] is **DENIED**.

---

[4] Because the Court finds Auto-Owners waived its defense based on the notice provision of the Policy, that there is a fact issue as to whether it received prompt notice, and that it failed to show it was prejudiced by any late notice, the Court does not reach the parties' remaining arguments.

**SO ORDERED** this 2nd day of June, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE