# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| GREGORY WIEDEMAN, <br>       **Plaintiff,** <br> v. <br> CANAL INSURANCE COMPANY, H&F TRANSFER, INC., AUTO-OWNERS INSURANCE COMPANY, WALTER PATRICK DORN, IV, WESCO INSURANCE COMPANY, and SALEM LEASING CORPORATION, d/b/a Salem Nationalease, <br>       **Defendants.** | 1:15-cv-4182-WSD |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Gregory Wiedeman's ("Plaintiff") Renewed Motion for Sanctions Against Defendants H&F Transfer, Inc. and Salem Leasing Corporation [221] ("Renewed Sanctions Motion").

## I. BACKGROUND

This action arises from an August 8, 2014, collision (the "Collision") between Plaintiff and Defendant Walter Patrick Dorn, IV, an employee of Defendant H&F Transfer, Inc. ("H&F"). The truck Dorn was driving was leased by H&F from Salem Leasing Corporation ("Salem"). Plaintiff claims H&F and

Salem conspired to destroy, conceal, and falsify data from the electronic control module ("ECM") of the truck involved in the Collision.

On the day of the Collision, the investigating officer found Plaintiff at fault for causing the Collision and issued Plaintiff a citation for failure to yield to the red light. Plaintiff told the officer "he did not know what he was thinking running the red light." ([223] at 2-3).

On August 11, 2014, three days after the Collision, H&F returned the truck to Salem, after which H&F did not have possession, custody, or control of the truck or the ECM data contained in it. ([222] at 2-3). On August 14, 2014, Salem performed what it claims is an industry-standard preventative maintenance check on the truck. ([223] at 3). The purpose of the check is to identify any maintenance issues to ensure the truck can be safely operated before it is leased to the next customer. ([223] at 4). This maintenance check resulted in a reset and deletion of non-maintenance data from the truck's ECM. ([221] at 5). Salem claims it was not aware that the maintenance check procedure would reset non-maintenance data resident on the ECM. ([223] at 4).

On August 18, 2014, H&F retained John Bethea to inspect the truck. On August 26, 2014, Mr. Bethea inspected the truck. In his July 27, 2016, expert report, Mr. Bethea opined that (1) no sudden deceleration was recorded by the

2

ECM within the subject truck at the time of the incident and (2) it is not possible for any sudden deceleration data related to the subject incident to have been overwritten by subsequent sudden deceleration events because the incident was never captured by the ECM. ([223] at 4).

On October 7, 2014, Plaintiff sent H&F a letter regarding preservation of evidence. Plaintiff did not send a similar letter to Salem. ([223] at 4).

On August 11, 2016, Plaintiff filed his first Motion for Sanctions. At a September 2, 2016, hearing, the Court determined that it did not have sufficient information to rule on Plaintiff's motion, and it required H&F and Salem to recover and produce the laptop Mr. Bethea used during his inspection. The Court allowed Plaintiff to file a renewed sanctions motions. Two months later, Plaintiff received a hard drive from the laptop, which revealed that the truck's ECM had been accessed between the Collision and Mr. Bethea's inspection. The data shows that, prior to the reset, the ECM recorded three sudden deceleration events, one of which Plaintiff claims "likely was the incident in this case." ([221] at 4).

On April 5, 2017, Plaintiff filed his Renewed Sanctions Motion. H&F claims that the conduct of which Plaintiff complains took place after H&F transferred the truck to Salem, and that H&F thus cannot be held liable for any alleged spoliation. Salem claims that, because litigation was not reasonably

3

foreseeable, it did not have a duty to preserve the ECM data at the time it accidentally reset the data during its maintenance check.

## II. DISCUSSION

### A. Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009) (internal quotation marks omitted) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). A party seeking spoliation sanctions must prove that (1) the missing evidence existed at one time; (2) the defendant had a duty to preserve the evidence; and (3) the evidence was crucial to the plaintiff's prima facie case. Marshall v. Dentfirst, P.C., 313 F.R.D. 691, 694 (N.D. Ga. 2016) (citing In re Delta/AirTran Baggage Fee Antitrust Litig., 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011)). In considering the particular spoliation sanction to impose, "courts should consider the following factors: (1) prejudice to the non-spoiling party as a result of the destruction of evidence, (2) whether the prejudice can be cured, (3) practical importance of the evidence, (4) whether the spoiling party acted in good or bad faith, and (5) the potential for abuse of expert

testimony about evidence not excluded." In re Delta, 770 F. Supp. 2d at 1305 (citing Flury v. Diamler Chrysler Corp., 427 F.3d 939, 945 (11th Cir. 2005)).

Even if the Court finds spoliation, a sanction of default or an instruction to the jury to draw an adverse inference from the party's failure to preserve evidence is allowed "only when the absence of that evidence is predicated on bad faith." Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997). A showing of bad faith requires the plaintiff to demonstrate that a "party purposely loses or destroys relevant evidence." Id. Mere negligence in destroying evidence is not sufficient to justify striking an answer. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1310 (11th Cir. 2009). In determining whether to impose sanctions for spoliation, "[t]he court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party." Flury, 427 F.3d at 946. "The Eleventh Circuit has discussed and relied on Georgia state law in spoliation cases, even though federal law applies to the issue of spoliation sanctions, because 'Georgia state law is wholly consistent with federal spoliation principles.'" Wilder v. Rockdale Cty., No. 1:13-CV-2715-RWS, 2015 WL 1724596, at *3 n.1 (N.D. Ga. Apr. 15, 2015) (quoting Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005)).

B. <u>Analysis</u>

H&F argues that it cannot be held liable for any alleged spoliation of evidence because the undisputed facts show that the truck, and thus the ECM data at issue, was not in its possession, custody, or control on August 14, 2014, when the ECM data was reset. The Court agrees. "It is axiomatic that in order for there to be spoliation, the evidence in question must have existed and been in the control of a party." <u>Wilder v. Rockdale Cty.</u>, No. 1:13-CV-2715-RWS, 2015 WL 1724596, at *3 (N.D. Ga. Apr. 15, 2015) (quoting <u>Sentry Select Ins. Co. v. Treadwell</u>, 734 S.E.2d 818, 848 (Ga. Ct. App. 2012)). Here, it is undisputed that H&F leased the truck from Salem. On August 11, 2014, H&F returned the truck to Salem. On August 14, 2014, when the ECM data was reset by Salem, the ECM data was in the exclusive control of Salem. Plaintiff's Renewed Sanctions Motion is denied with respect to H&F.

Salem argues that Plaintiff failed to establish spoliation, including because litigation was not reasonably foreseeable on August 14, 2014, when the ECM data was reset. "[I]n order for the injured party to pursue a remedy for spoliation, the spoliating party must have been under a duty to preserve the evidence at issue." <u>Phillips v. Harmon</u>, 774 S.E.2d 596, 603 (Ga. 2015). This duty arises when, from the perspective of the party in control of the evidence, litigation is reasonably

6

foreseeable.  Id. at 604.  For the defendant, "the duty arises when it knows or reasonably should know that the injured party, the plaintiff, is in fact contemplating litigation, which the cases often refer to in terms of 'notice' to the defendant."  Id.  Notice of litigation may be actual or constructive.  Id. at 605.

Constructive notice may be based on a variety of circumstances, including "the type and extent of the injury; the extent to which fault for the injury is clear; the potential financial exposure if faced with a finding of liability; the relationship and course of conduct between the parties, including past litigation or threatened litigation; and the frequency with which litigation occurs in similar circumstances."  Id.  The Court may also consider "not only what the plaintiff did or did not do after the injury and before the evidence in question was lost or destroyed, but also what the defendant did or did not do in response to the injury, including the initiation and extent of any internal investigation, the reasons for any notification of counsel and insurers, and any expression by the defendant that it was acting in anticipation of litigation."  Id.  However, "the mere fact that someone is injured, without more, is not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation."  Id. at 604.  "The defendant's duty also does not arise *merely* because the defendant investigated the incident[.]"  Id. at 605 n.9 (emphasis in original).

Here, Plaintiff argues "Defendants cannot dispute that they anticipated litigation on August 18, 2014." ([221] at 15). The question, however, is whether, from Salem's perspective, litigation was reasonably foreseeable on August 14, 2014, when the alleged spoliation occurred. The Court finds it was not. The investigating officer on the day of the Collision found Plaintiff at fault for causing the Collision, and Plaintiff told the officer "he did not know what he was thinking running the red light." ([223] at 2-3). Salem presents evidence that, even as late as August 25, 2014, it was under the impression that there was no dispute as to whether Plaintiff caused the Collision, and that it attempted to have Plaintiff's insurance company cover the damage caused to Salem's truck. ([223] at 4, 12). The evidence is, based on the information available to Salem, that Plaintiff was not contemplating action against Salem.

Plaintiff next claims "Defendants' investigations of the accident show that they knew litigation as likely." ([221] at 15). Plaintiff, however, does not identify what actions either H&F or Salem took on or before August 14, 2014, that might qualify as an "investigation." Assuming Plaintiff refers to the August 14, 2014, maintenance inspection, Salem presents evidence that such inspections are performed on all commercial vehicles that have been leased and returned. (See [223] at 11). In sum, Plaintiff fails to present any evidence to show that Salem was

on notice that it was reasonably foreseeable on August 14, 2014, that Plaintiff was anticipating litigation against Salem. "[T]he mere fact that someone is injured, without more, is not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation." Phillips, 774 S.E.2d at 604. Plaintiff's Renewed Sanctions Motion is denied with respect to Salem.

Finally, to the extent Plaintiff bases his spoliation claim on Defendants' alleged falsification of data to support Bethea's expert report, and their alleged concealment of their misconduct from Plaintiff and the Court, Plaintiff's claim rests on the assumption that Salem or H&F was aware that the ECM data was reset. The Court finds Plaintiff presents only speculation that either Salem or H&F was aware of this fact. In the absence of evidence of bad faith, the Court declines to award sanctions for spoliation. See Bashir, 119 F.3d at 931.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Gregory Wiedeman's Renewed Motion for Sanctions Against Defendants H&F Transfer, Inc. and Salem Leasing Corporation [221] is **DENIED**.

**SO ORDERED** this 9th day of June, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE