IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GREGORY WIEDEMAN,<br><br>        **Plaintiff,**<br><br>v.<br><br>CANAL INSURANCE COMPANY, H&F TRANSFER, INC., AUTO-OWNERS INSURANCE COMPANY, WALTER PATRICK DORN, IV, WESCO INSURANCE COMPANY, and SALEM LEASING CORPORATION, d/b/a Salem Nationalease,<br><br>        **Defendants.** | 1:15-cv-4182-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendants H&F Transfer, Inc. ("H&F") and Walter Patrick Dorn, IV's ("Dorn") (together, "Defendants") Motion for Partial Summary Judgment [180].

### I. BACKGROUND

    A.    <u>Facts</u>

This action arises from an August 8, 2014, collision (the "Collision") between Plaintiff Gregory Wiedeman ("Plaintiff") and Dorn, an employee of H&F. (<u>See</u> Defs.' Statement of Undisputed Material Facts [201.1] ("DSUMF") ¶¶ 1-3;

Pl.'s Resp. [204.1] ("R-DSUMF") ¶¶ 1-3). Plaintiff was riding his motorcycle northbound on Lawrenceville Highway in DeKalb County, Georgia at 9:55 p.m. on the day of the Collision. (DSUMF ¶ 1; R-DSUMF ¶ 1). Dorn was driving his box truck southbound on Lawrenceville Highway. (DSUMF ¶ 2, R-DSUMF ¶ 1). Dorn was making a left turn onto Montreal East Road when Plaintiff struck the truck. (DSUMF ¶ 3; R-DSUMF ¶ 3).

Dorn and both his passengers, Matthew Smarr and Tommy Frye, testified that, at the time of the Collision, Dorn had a green arrow. (DSUMF ¶ 4; R-DSUMF ¶ 4). Plaintiff testified that he had a green light. (DSUMF ¶ 5; R-DSUMF ¶ 5).[1]

A police officer quickly arrived on the scene of the Collision. (DSUMF ¶ 9; R-DSUMF ¶ 9). The police report narrative states: "Driver 1 [Plaintiff] failed to yield for a red light and struck vehicle #2. Driver #1 stated to me that he did not know what he was thinking when he ran the light."[2] ([169.1] at 2).

---

[1] It was raining at the time of the Collision. (DSUMF ¶ 6; R-DSUMF ¶ 6). Despite that it was nighttime and raining, Plaintiff was wearing a tinted shield on his motorcycle. (DSUMF ¶ 7; R-DSUMF ¶ 7). Georgia's Motorcycle Operator's Manual states: "tinted eye protection should not be worn at night or at any other time when little light is available." (DSUMF ¶ 8; R-DSUMF ¶ 8).

[2] Plaintiff claims the accident report reflects only a statement that "Driver 1 failed to yield for a red light and struck vehicle #2," but that this statement could have referred to either driver. (R-DSUMF ¶ 10). This argument is plainly

2

At the time of the Collision, Dorn was employed by H&F, and was acting within the course and scope of his employment. (DSUMF ¶ 12; R-DSUMF ¶ 12). Plaintiff contends that H&F failed to qualify Dorn under the Federal Motor Carrier Safety Regulations ("FMCSRs"), including because H&F failed to provide an application that complied with the requirements of the FMCSRs. H&F failed to include certain information on its FMCSR application, including carrier information, date of birth, prior address, equipment experience, and prior traffic violations. (See DSUMF ¶ 19; R-DSUMF ¶ 19). Plaintiff contends that a driver who is not qualified cannot operate a commercial motor vehicle. (See R-DSUMF ¶ 16).

Plaintiff's ten-year driving record shows that, on January 28, 2012, he received a ticket for "Disobeying an official traffic device"—that is, running a red light, stop sign, or the like. (See [204.135] at 2). His record also shows three speeding tickets between 2010 and 2014. (Id.). Before he was hired by H&F, Dorn had been arrested for public drunkenness, possession of marijuana, and possession or consumption of alcohol on public property.

---

contradicted by the report itself, which states "Driver #1 was transported to Grady by medic 53 and his motorcycle was towed . . . ." ([169.1] at 2). The report also contains a diagram clearly labeling "Unit 1" as Plaintiff's motorcycle and "Unit 2" as Dorn's truck. (See id.). The Court relies on the record evidence.

In 2016, H&F obtained a report showing that Dorn did not have any violations that would have disqualified him from driving the truck. (DSUMF ¶17). Plaintiff's expert, Whitney Morgan, agrees that nothing in Dorn's file, including his driving record, disqualified him from driving the truck. (DSUMF ¶ 18).[3]

B.  Procedural History

On February 26, 2016, Plaintiff filed his Amended Complaint [33]. In it, Plaintiff asserts the following claims against H&F: (1) *respondeat superior* liability for Dorn's allegedly negligent actions; (2) negligent hiring, retention, entrustment and supervision of Dorn; (3) failure to comply with federal and state motor carrier safety regulations and trucking industry standards of care; and (4) punitive damages pursuant to O.C.G.A. § 51-12-5.1. Plaintiff asserts the following claims against Dorn: (1) negligence; (2) reckless driving; and (3) punitive damages pursuant to O.C.G.A. § 51-12-5.1.

On September 30, 2016, Defendants filed their Motion for Partial Summary Judgment. Defendants seek summary judgment on Plaintiff's claims for punitive damages and on Plaintiff's claims for negligent hiring, retention, entrustment and supervision against H&F. Defendants argue that, because there is no evidence that

---

[3]  The Court sets forth additional facts in its discussion of the evidence presented in the Motion for Partial Summary Judgment.

4

Dorn acted with malice or evil motive or that he exhibited a pattern or policy of dangerous driving, Plaintiff cannot recover punitive damages from him. H&F argues that Plaintiff's negligent hiring, training, supervision, retention, and entrustment claims should be dismissed because H&F admits it may be liable for Dorn's actions under a *respondeat superior* theory of liability. H&F argues it is not subject to punitive damages for any alleged negligent hiring, training, entrustment, supervision, or retention because there is no evidence that Dorn had any driving violations, that he was not qualified to drive the truck, or that he was incompetent or reckless.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a

genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment. Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of

the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

B.   Analysis

1.   Punitive Damages Claim against Dorn

Defendants argue that Plaintiff failed to present a triable issue of fact regarding his punitive damages claim against Dorn. "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences." O.C.G.A. § 51-12-5.1(b). "Negligence, even gross negligence, is inadequate to support a punitive damage award." Colonial Pipeline Co v. Brown, 365 S.E.2d 827, 830 (Ga. 1988).

In automobile collision cases, punitive damages may not be awarded "where the driver at fault simply violated a rule of the road." Carter v. Sells, 494 S.E.2d 279, 281 (Ga. Ct. App. 1997). Punitive damages are only recoverable "where the collision resulted from a pattern or policy of dangerous driving." Id. "Examples of a pattern or policy of dangerous driving include driving history of several DUIs, excessive speed and striking vehicle twice, driving twenty miles with serious

mechanical difficulties, [and] DUI in conjunction with numerous traffic safety violations." Corbett v. Celadon Trucking Servs., Inc., No. 1:14-cv-1233-TWT, 2016 WL 492715, at *1 (N.D. Ga. Feb. 8, 2016) (internal quotation marks omitted); accord Carter, 494 S.E.2d at 281 (citing cases showing pattern or policy of dangerous driving).

Plaintiff claims the following in support of his punitive damages claim against Dorn: Dorn did not tell the truth about what he was doing the day of the Collision, first saying he helped load the truck then denying that; his driver's log is inaccurate; there is no indication whether he took a break during the drive to Atlanta; and there is a "strong possibility that Dorn lied to the police officer about what happened prior to the accident." ([204] at 14-15). Plaintiff also claims that, before the Collision, "Dorn had several motor vehicle violations and arrests for drug possession." (Id. at 15). Plaintiff's ten-year driving record shows that, on January 28, 2012, he received a ticket for "Disobeying an official traffic device"—that is, running a red light, stop sign, or the like. (See [204.135] at 2). His record also shows three speeding tickets between 2010 and 2014. (Id.). As to Dorn's drug-related arrests, Plaintiff presents evidence that Dorn was previously arrested for public drunkenness, possession of marijuana, and possession or consumption of alcohol on public property.

8

First, evidence that Dorn may have had inconsistent statements regarding the Collision or his activities on the day of the Collision does not show that he engaged in willful misconduct or had a "pattern or policy of dangerous driving." Plaintiff argues that the inconsistent statements and log entries show Dorn was fatigued at the time of the Collision. There is, however, no evidence, direct or circumstantial, that Dorn was, in fact, fatigued, and Plaintiff's fatigue argument is pure speculation. Even if the inconsistencies could show that Dorn did not have adequate rest time at the time of the Collision, Plaintiff does not present any evidence that Dorn had a pattern or policy of driving without adequate rest, or that Dorn was so fatigued as to exhibit "that entire want of care which would raise the presumption of conscious indifference to the consequences." O.C.G.A. § 51-12-5.1(b); cf. Coker v. Culter, 431 S.E.2d 443, 444-45 (Ga. Ct. App. 1993) (even where defendant admitted speeding in poor conditions and consuming alcohol before driving, no "clear and convincing evidence that defendant's acts arose to the level sought to be punished under O.C.G.A. § 51-12-5.1"). Second, that Dorn had previously been arrested on drug- or alcohol-related charges is not relevant to his driving habits, because the arrests were not made in connection with his driving any vehicle, and there is no evidence that Dorn was intoxicated at the time of the Collision. See Ballard v. Keen Transp., Inc., No. 4:10-cv-54, 2011 WL 203378, at

*4 (S.D. Ga. Jan. 19, 2011) (noting that only previous driving incidents that relate to the cause of the present collision are relevant to the punitive damages issue).

Finally, turning to his driving record, Dorn's speeding tickets are not relevant to whether he had a pattern or policy of dangerous driving that caused the collision at issue here, because there is no evidence to show Dorn was speeding at the time of the Collision or that speed was a factor in the Collision. See id. Even if speeding were at issue here, Dorn's record of three speeding tickets over the last ten years is unremarkable, and does not constitute a "pattern or policy." Even if a jury finds that Dorn caused the Collision by running a red light, Dorn's single 2012 ticket for disobeying a traffic device does not establish a "pattern or policy" of doing so. Cf. Corbett, 2016 WL 492715, at *2 (no pattern of dangerous driving where, in previous ten years, defendant received four citations for speeding or driving too fast for conditions and was involved in one accident); Carter, 494 S.E.2d at 281 (citing cases showing pattern or policy of dangerous driving).

Here, Plaintiff fails to present clear and convincing evidence that Dorn had a pattern of dangerous driving that resulted in the Collision. Defendants' Motion for Partial Summary Judgment is granted on Plaintiff's punitive damages claim against Dorn.

2. Negligence and Punitive Damages Claims against H&F

Defendants move for summary judgment on Plaintiff's negligent hiring, training, supervision, retention, and entrustment claims and his claim for punitive damages against H&F. Under Georgia law, *respondeat superior* and negligent hiring, training, supervision, retention, and entrustment are mutually exclusive theories of liability. See Downer v. Jeffrey Boyer, LP, No. 1:15-cv-3734-TWT, 2017 WL 1093167, at *2 (N.D. Ga. Mar. 23, 2017) (citing Durben v. Am. Materials, Inc., 503 S.E.2d 618, 619 (Ga. Ct. App. 1998)). "To prevent double recovery, when an employer admits the applicability of *respondeat superior*, it is generally entitled to summary judgment on claims for negligent entrustment, hiring, and retention." Id. (internal quotation marks omitted, alteration adopted) (quoting Durben, 503 S.E.2d at 619). A plaintiff may maintain a negligent hiring claim in addition to a claim of negligence under a *respondeat superior* theory if the plaintiff "has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee or entrusting a vehicle to such employee." Durben, 503 S.E.2d at 619. The question for the Court is whether Plaintiff can maintain his cause of action for punitive damages against H&F based upon its alleged independent negligent hiring, training, supervision, retention, and entrustment of Dorn.

"At summary judgment, the question is whether [the plaintiff] produced evidence from which a jury could infer that [the employer]'s actions showed a conscious indifference to the consequences as alleged in the complaint." Mastec N. Am., Inc. v. Wilson, 755 S.E.2d 257, 259 (Ga. Ct. App. 2014). Plaintiff may do so "by showing that the employer had actual knowledge of numerous and serious violations on its driver's record, or, at the very least, when the employer has flouted a legal duty to check a record showing such violations." Id. (internal quotation marks omitted) (citing, among others, Smith v. Tommy Roberts Trucking Co., 435 S.E.2d 54 (Ga. Ct. App. 1993) (reversing grant of summary judgment on negligent entrustment and punitive damages where company ignored regulations requiring license record check, where such a check would have unearthed numerous violations, including DUI, and where the evidence otherwise supported an inference that the company had actual knowledge that its driver was incompetent or had a propensity to drive dangerously)).

Plaintiff presents evidence and argument that H&F failed to follow federal regulations when it did not investigate Dorn's qualifications and driving record. (See [204] at 16-17). Plaintiff argues that, among other violations, H&F failed to "get even the most basic, essential information about Dorn on his job application, failed to get a motor vehicle record at the time of hiring or within thirty days of

hire, and failed to inquire with prior employers to determine if Dorn had previously worked for a regulated carrier." ([204] at 18-19). Plaintiff also argues that, "[a]lthough H&F had learned that Dorn had been arrested on a drug charge and Dorn had agreed to submit to a drug test as a condition of employment, H&F never did any drug or alcohol tests and never pulled Dorn's criminal record which contained drug and alcohol convictions." (Id. at 19).

Plaintiff fails, however, to show that had H&F investigated Dorn's qualifications, driving record, and criminal history it would have revealed "numerous and serious violations" relating to Dorn's driving or put H&F on notice that Dorn was incompetent to drive H&F's trucks. See Wilson, 755 S.E.2d at 259. Had H&F conducted the required three-year driver safety performance history investigation, the investigation would have revealed only a speeding ticket for driving less than 10 miles per hour over the speed limit and a ticket for disobeying an official traffic device. These infractions, even if known, do not rise to the level necessary to show that H&F's actions showed a conscious indifference to the consequences. Cf. Smith, 435 S.E.2d at 57 (issue of fact on punitive damages where a company's compliance with regulations would have revealed numerous other traffic violations, including a DUI).

13

While an investigation into Dorn's criminal history would have revealed several alcohol- and drug-related arrests, there is no evidence that Dorn was intoxicated during the Collision or that intoxication played a role in it. Plaintiff fails to show that any of H&F's allegedly negligent actions or omissions with respect to Dorn's prior arrests caused the Collision. Cf. Cooper v. Marten Transp., Ltd., No. 1:10-CV-03044-JOF, 2012 WL 12358220, at *4 (N.D. Ga. Feb. 23, 2012) (denying summary judgment on punitive damages where company knew of driver's numerous speeding citations because speeding was a cause of the accident at issue).[4] There is no evidence that H&F would not have hired Dorn had it learned of his drug- and alcohol-related arrests. The evidence is further that a motor carrier is not required to perform a criminal background check under the FMCSRs. ([180.7] 52:15-22).

Finally, the parties argue at length whether Dorn was qualified to drive the truck. Plaintiff points to several technical errors and omissions in H&F's FMCSR application to argue that Dorn was not qualified, and thus that H&F was negligent in hiring, supervising, training, and entrusting him. Defendants note that none of

---

[4] Because there is no evidence that intoxication played a role in the Collision, Plaintiff's argument that H&F was negligent in not drug-testing Dorn fails. There is no causal connection between H&F's allegedly negligent failure to drug-test Dorn and Plaintiff's injuries.

14

the missing FMCSR information disqualified Dorn from driving. In determining whether H&F is liable for punitive damages for negligent hiring, training, or supervision the relevant question is not whether Dorn was technically qualified, but whether H&F knew or had reason to know Dorn was "incompetent or habitually reckless." See Smith, 435 S.E.2d at 57. That H&F was negligent, or even grossly negligent, in failing to comply with FMCSRs or in training or supervising Dorn is not enough. See Colonial Pipeline, 365 S.E.2d at 830. There is no evidence in this case that Dorn was incompetent or habitually reckless. To the contrary, the evidence is that Dorn was never involved in any other accident in a truck, Dorn's road test conducted by H&F was acceptable,[5] his physical exam and certification were acceptable, the verification of the medical examiner was acceptable, and his Class D South Carolina driver's license was acceptable and valid. Plaintiff simply does not offer any evidence to show that H&F's actions showed a conscious indifference to the consequences.[6] Defendants' Motion for

---

[5] Plaintiff argues that the road test, which was conducted in a parking lot, was insufficient because the test is required to be conducted in road conditions. (R-DSUMF ¶ 21). This technical shortcoming, even if negligent or grossly negligent, does not support that Dorn was incompetent or habitually reckless.

[6] Plaintiff also claims H&F was negligent in failing to train Dorn on proper protocol for completing driver logs. As explained above, Plaintiff offers only speculation that Dorn was fatigued at the time of the Collision or that fatigue played a role in the Collision. Plaintiff thus cannot show a causal connection

Partial Summary Judgment is granted on Plaintiff's negligent hiring, training, supervision, retention, and entrustment claims and his claim for punitive damages against H&F.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants H&F Transfer, Inc. and Walter Patrick Dorn, IV's Motion for Partial Summary Judgment [180] is **GRANTED**.

**SO ORDERED** this 20th day of June, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

between the Collision and H&F's alleged failure to train Dorn regarding driver logs. Even if Plaintiff could establish such a connection, H&F's alleged failure to train does not rise to the level of conscious indifference necessary for a claim of punitive damages.