# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| GREGORY WIEDEMAN,<br><br>    **Plaintiff,**<br><br>v.<br><br>CANAL INSURANCE COMPANY, H&F TRANSFER, INC., AUTO-OWNERS INSURANCE COMPANY, and WALTER PATRICK DORN, IV,<br><br>    **Defendants.** | 1:15-cv-4182-WSD |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Gregory Wiedeman's ("Plaintiff") Motion to Exclude Daren Marceau Pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u> [182] ("Motion").

## I.    BACKGROUND

This action arises from an August 8, 2014, collision (the "Collision") between Plaintiff and Defendant Walter Patrick Dorn, IV, an employee of Defendant H&F Transfer, Inc. ("H&F"). The parties dispute, among other things, which party had the right-of-way and whether Plaintiff had lost control of his motorcycle before being struck by H&F's truck.

H&F intends to call Daren Marceau to testify regarding the mechanics of the crash, including the appropriateness of Plaintiff's actions prior to the Collision. Plaintiff challenges the following of Marceau's opinions:

- Plaintiff could have avoided the Collision if Plaintiff had noticed and reacted to the truck's movement earlier, ([112] at 14-15);

- Plaintiff improperly activated and locked his rear brake alone, resulting in a loss of control prior to impact, (id. at 12); and

- Plaintiff's vision was impaired by his tinted helmet visor, the raindrops hitting his visor, and the glare created by headlights reflecting off the rain, (id. at 15).

H&F now states that Marceau will not be offered to testify as to Plaintiff's impaired vision or that Plaintiff could have avoided the Collision. Accordingly, Plaintiff's Motion is denied as moot with respect to these two opinions. H&F still intends to offer Marceau to testify that Plaintiff improperly activated and locked his rear brake alone, resulting in a loss of control prior to impact.

Plaintiff argues that Marceau's testimony is "unsupported by any calculation, precise measurement, or collected data[,]" and that it is contradicted by relevant scientific literature. (Mot. at 4). To support his argument, Plaintiff notes that, when deposed, Marceau admitted he did not perform any testing or calculations to support his conclusions, and he admitted he did not consult any specific authority to form his opinions. (Id. at 3 (citing Marceau Dep. [182.2])).

2

Plaintiff further argues that Marceau's ignores obvious alternative explanations, and that his testimony would not be helpful to the jury.

H&F notes that Marceau has more than two decades of experience in civil and traffic engineering and accident reconstruction. (See [112]; [195.1] ("Marceau Decl."). He obtained a Bachelor of Science in Civil Engineering from North Carolina State University in 1994 and a Master of Science in Civil Engineering from North Carolina State University in 1995. (Marceau Decl. ¶ 2). He is a Registered Professional Engineer in four states; North Carolina, Virginia, South Carolina, and Georgia. (Id.) He is a Certified Traffic Signal Technician and Signal Inspector and wrote, among other publications, a book titled Accident Reconstruction at Traffic Signal Intersections. (Id.). Marceau instructs various professionals on topics including traffic accident investigation, reconstruction involving traffic control devices, and human factors within the roadway, driving, and pedestrian environments. (Id.). He is a court-qualified expert in motorcycle operations, and he has operated motorcycles for many years. (Id.). He also has personal experience, during training and non-training operations, with motorcycle skidding on wet and dry paved and non-paved surfaces, and has participated in motorcycle crash testing. (Id.).

In his Declaration, Marceau explains that, based upon his education, training, knowledge, and expertise as a civil and forensic engineer, accident investigator, and accident reconstructionist, he is familiar with the principles and methodology accepted in the profession and he has used those principles and methodologies in preparing his opinions this case. (Marceau Decl. ¶ 3). Marceau bases his opinion that Plaintiff improperly activated and locked his rear brake alone, resulting in a loss of control prior to impact on the following: (1) tire marks showing skidding on the rear tire, not the front tire (2) the lack of damage to the H&F truck's grill; and (3) the testimony of witness LuAnn Downes that she heard skidding. Based on this evidence, Marceau explains the methodology he used to support his opinion that a locking rear tire alone will cause a motorcycle to "go down." (See [195] at 13-18). His methodology "is based on a combination of physical evidence and physics[,]" including Newton's first law of motion. (Marceau Decl. ¶ 4).

## II.   DISCUSSION

Under the Federal Rules of Evidence, expert testimony is admissible if: (1) the expert is qualified to testify regarding the subject matter of her testimony; (2) the methodology that the expert used to reach his or her conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact in

4

understanding the evidence or in determining a fact at issue.  United States v. Scott, 403 F. App'x 392, 397 (11th Cir. 2010) (citing United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)) (en banc); Fed. R. Evid. 702.

With respect to the first requirement, Plaintiff does not contest, and the Court finds, that Marceau is qualified to testify regarding the effects of using front and rear brakes in a motorcycle.

Turning to the second element, a district court must make a preliminary determination as to whether the expert's methodology is reliable.  Scott, 403 F. App'x at 397.  In Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 (1993), the Supreme Court provided a non-exclusive list of factors for the district court to consider:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

Frazier, 387 F.3d at 1262.  These factors are only general guidelines, and the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).

Plaintiff claims Marceau's methodology is not reliable because he did not perform any calculations. With respect to the skid marks on the rear tire of Plaintiff's motorcycle, Marceau combines photographic evidence with the testimony of witness LuAnn Downes that she heard skidding to opine that the skid marks on the rear tire were created during the Collision. Marceau opines that, based on photographs of the tire, ([195.1] at 11-12), Plaintiff "applied his rear brakes as is evident by the skid marks on the tire. This shows that [Plaintiff] locked up his rear brake which is why he began to fall over as explained above." (Marceau Decl. ¶ 12). Plaintiff relies on <u>Motorcycle Accident Reconstruction</u>, 1997, Albert T. Baxter, IPTM, p. 90 to support this conclusion. Plaintiff does not offer any evidence or argument to show the types of measurements Marceau could have made with respect to the skid marks on the tire, and he does not contend that Marceau's reliance on <u>Motorcycle Accident Reconsturction</u> is misplaced. <u>See</u> Fed. R. Evid. 702, Adv. Comm. Note (2000) ("Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise."). Underscoring that calculations are not necessary or appropriate with respect to evaluating skid marks, Plaintiff's own expert, Sean Alexander, opined that a "skidding tire will have a skid patch left from the demolition of the rubber

6

compound on the road. Since the road surface . . . acts as an abrasive, the tires are essentially sanded down and a flat spot may exist." (Alexander Dep. 103:8-13).

Regarding the lack of damage to the truck's grill, Marceau notes that, based on a tape measurement, (see [195.1] at 14), the middle of the top portion of the truck bumper is approximately 2.5' high. Based on publicly-available information, (see [195.1] at 16), the saddle on Plaintiff's motorcycle is approximately 2.5' high. He opines that, based on these measurements, if the motorcycle was upright during impact, it and Plaintiff's body would have been high enough to also cause damage to the grill. Because the photograph of the front of the truck shows that all the damage is on the bumper and there is no damage to the grill, he opines that this result "can only happen if the motorcycle was already tipping over at the time of impact." (Marceau Decl. ¶ 13). Plaintiff appears to ignore Marceau's measurements with respect to the truck's grill, focusing instead on Marceau's alleged lack of measurements relating to his testimony that Alexander's conclusion is "physically impossible." (See [208] at 7-8). This testimony is not the subject of Plaintiff's Motion, and does not support Plaintiff's argument that Marceau's methodology with respect to Plaintiff's use of the rear brake is unreliable. The Court rejects Plaintiff's argument that Marceau should have conducted more measurements or calculations in forming his conclusion.

Plaintiff next argues that Marceau's methodology is not reliable because he failed to consider obvious alternative explanations. The advisory committee's notes for Rule 702 provide an additional list of factors or tests for a court to consider, including "[w]hether the expert has adequately accounted for obvious alternative explanations." "Like the four Daubert factors, these [additional] factors do not comprise a definitive checklist, nor is any single factor dispositive of reliability; instead, the tests articulated in the advisory committee's notes merely illustrate the issues a court may consider in evaluating an expert's testimony. Stoner v. Fye, No. 5:15-cv-102 (CAR), 2017 WL 2434461, at *4 (M.D. Ga. June 5, 2017). Plaintiff points to Alexander's alternate explanation that Plaintiff applied both brakes and locked the front brake, causing "[t]he front steering assembly [to] instantaneously turn." ([182] at 12 (quoting Alexander Dep. 104:6-15)). Alexander, however, further opined that had both brakes been applied, the motorcycle "would fall down very shortly thereafter." (Alexander Dep. 105:24-106:2). Marceau, in fact, considered and rejected this explanation, opining that, "[h]ad [Plaintiff] applied both brakes hard, and not locked the rear brake, the bike would not have likely gone into a yaw and tipped over . . . [and] his stopping distance would have been shorter than applying a rear brake only." (Marceau

Decl. ¶ 16). The Court finds Marceau did not fail to consider obvious alternate explanations.

Turning to the final Rule 702 factor, the Court finds Marceau's testimony will assist a jury. The jury is unlikely to know about the differences between using a front or rear brake in a motorcycle, the skid marks that result from the use of either brake, and the effects of using each brake on the stability of a motorcycle. These issues are fundamental to the question whether Plaintiff lost control of his motorcycle prior to being struck by H&F's truck. Because Marceau is qualified to opine regarding the use of brakes in a motorcycle, his methodology is sufficiently reliable, and his testimony will assist a jury, Marceau's testimony is admissible. Plaintiff's Motion is denied.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Gregory Wiedeman's Motion to Exclude Daren Marceau Pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u> [182] is **DENIED IN PART AS MOOT** and **DENIED IN PART**. Plaintiff's Motion is **DENIED AS MOOT** with respect to Marceau's opinions regarding Plaintiff's impaired vision and that Plaintiff could have avoided the Collision. Plaintiff's Motion is **DENIED** with respect to Marceau's opinion that Plaintiff

improperly activated and locked his rear brake alone, resulting in a loss of control prior to impact.

**SO ORDERED** this 7th day of July, 2017.

*[signature: William S. Duffey]*
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE